```
                UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF MISSISSIPPI
                      JACKSON DIVISION


JOE H. BRYANT, JR.                                    PLAINTIFF

VS.                             CIVIL ACTION NO. 3:05CV179LN

MILITARY DEPARTMENT OF THE STATE
OF MISSISSIPPI, BY AND THROUGH
THE MISSISSIPPI AIR NATIONAL GUARD,
FRANKLIN E. CHALK, FREDERICK D.
FEINSTEIN, ROY A. GRAHAM, BILLY JOE
GRESSETT, DONALD E. JONES, LANGFORD L.
KNIGHT, F. GREGORY MALTA, WILLIAM F.
PARTEN, ROBERT E. PIERCE, ROGER E.
SHIRLEY, CHARLES F. STEED, AARON K.
WILSON AND THOMAS TEMPLE; AND JOHN DOES 1-20   DEFENDANTS
```

### CORRECTED MEMORANDUM OPINION AND ORDER

Defendant Mississippi Air National Guard (MSANG) has filed in this case a motion to dismiss pursuant to Rule 12(b)(1), 12(b)(6) and 12(c) and on the basis of the Eleventh Amendment, and for judgment on the pleadings, and has filed a separate motion for dismissal, sanctions and related relief pursuant to Rule 11, 28 U.S.C. § 1927 and Mississippi's Litigation Accountability Act, Miss. Code Ann. § 11-55-1 et seq. All of the individual defendants have joined in MSANG's motion.[1] Plaintiff Joe H. Bryant has responded in opposition to MSANG's motions and the court, having now considered the parties' memoranda of

---

[1] Thomas Temple filed his joinder on April 14th, followed by Langford L. Knight, F. Gregory Malta, William F. Parten, Roger E. Shirley, Charles F. Steed, Aaron K. Wilson, Franklin E. Chalk, Frederick D. Feinstein, Roy A. Graham, Billy Joe Gressett and Donald E. Jones, who filed their joinders on April 15th, and Robert Pierce, who filed a motion or joinder on April 19th.

authorities, concludes that MSANG's motion is due to be granted, but the motions of the individual defendants must be denied.

According to the complaint in this cause, Bryant began his military service in 1974, and in 1980, was assigned to duty with MSANG's 186th Tactial Recon Group, which later became the 186th Refueling Wing, located at Key Field in Meridian, Mississippi. He eventually was assigned to MSANG Headquarters, as its Director of Operations. Bryant states that between 1990 and 1998, he "began to observe wrongful actions by superiors in the method and manner in which his fellow airmen were being treated."[2] He alleges that in an effort "to protect and defend his fellow airmen at the 186th, in their jobs, ranks and assignments, as well as to protect the integrity of the 186th," he "took certain actions," including first addressing his allegations and concerns to superior officers, and

---

[2] This allegedly included, but was not limited to, racial discrimination; sexual harassment; failure to accomplish required training and falsification of training and certification records; use of government property for non-military purposes; misappropriation of government property; dereliction of officers' duties; wrongful conduct unbecoming of certain officers; falsification of work hour and duty records; wrongful operation of a retail liquor store at Key Field; misreporting of the unit's military readiness status; false and misleading information provided in response to U.S. Congressional inquiries concerning activities associated with the base; improper conduct associated with official professional military education course work; improper and inaccurate officer performance reports; impropriety in the use of the 186th's personnel, time, equipment, property and resources for private/personal unofficial activities; and unauthorized retention and/or selection of disqualified and/or unqualified personnel in certain positions.

ultimately to requesting an investigation by the Inspector General of the Department of the Air Force pursuant to 10 U.S.C. § 1034.

According to Bryant, as a result of his allegations of wrongdoing against senior Guard officials, he was humiliated, intimidated and harassed by various defendants. He claims, for example, that when he first brought his allegations to the attention of then-Brigadier General of the MSANG, Harold Cross, in October 1988, Cross dismissed his complaint. Thereafter, while Bryant was deployed to Bosnia-Herzegovina during January 1999 through July 1999, Cross "sought Plaintiff's voluntary separation from MSANG," directing that plaintiff sign a letter of resignation (which plaintiff refused), and relieved plaintiff of his duties as Director of Operations; when plaintiff returned from Bosnia, he was not reinstated to his former position as Director of Operations but rather was assigned to the position of an officer junior in grade, lieutenant colonel, was directed to assist an officer junior to him, and was directed to "occupy" an office that was actually in a storage room; he was ordered to never report to anyone or perform any duties regarding the Wing's flight operations, even though he was a pilot and a colonel; certain of the defendants composed a career-damaging report in an effort to adversely affect his military record; Cross threatened him with loss of his career; Walker threatened him with dismissal from MSANG; he was assigned to a "storeroom" during a mandatory drill

weekend and was ridiculed by Weaver and others; he was ordered by defendant Malta to sign dismissal paperwork associated with his dismissal from MSANG; and someone (presumably one of the defendants) forged Bryant's signature to an acknowledgment that he would be separated from MSANG.

Plaintiff alleges that after initiation of the Inspector General's investigation, and as a result of the ensuing investigation, defendants engaged in threats, violence and other intimidation tactics, in reprisal for his having communicated wrongful conduct to the Inspector General.  He claims, for example, that he was met by armed MSANG airmen when he attempted to attend a Minority Awareness Council Meeting; repeated gun shots were fired in and around his residence; harassing telephone calls and anonymous hang-up calls were made to him; defendant Temple physically assaulted him; in a scheme to cause him to lose his civilian job with Federal Express, defendant Pierce attempted to get his pilot's license revoked by the FAA by falsifying medical information concerning plaintiff; the gasoline line to plaintiff's wife's vehicle was cut; the windows to his motor-home were shot out and appliances attached to the motor-home were destroyed; and the tires on his personal airplane were slashed.

Based on these allegations, Bryant has alleged claims for violations of the Military Whistleblower Protection Act, 10 U.S.C. § 1034, the Mississippi Whistleblower Protection Statute, Miss.

Code Ann. § 25-9-171, et seq., and the First Amendment, and asserts claims under 42 U.S.C. §§ 1983, 1985 and 1986.  He demands as relief compensatory and punitive damages, any penalties available under Mississippi Code Annotated § 25-9-171, et seq., prejudgment and post-judgment interest and attorney's fees.[3]

The resolution of MSANG's motion is rather straightforward. First, plaintiff's claim that MSANG violated the Military Whistleblower Protection Act, 10 U.S.C. § 1034, is due to be dismissed because that Act affords plaintiff no private cause of action.  The Act, which prohibits any person from taking any unfavorable personnel action or withholding a favorable personnel action "as a reprisal against a member of the armed forces for making or preparing a communication to a Member of Congress or an Inspector General," 10 U.S.C. § 1034(b), provides only an administrative remedy and not a private cause of action. See Acquisto v. U.S., 70 F.3d 1010, 1011 (8th Cir. 1995) (concluding, upon review of the statutory language, legislative history and administrative regulations, that "§ 1034 does not provide [a service member] with any private cause of action, express or implied"); Soeken v. U.S., 47 Fed. Cl. 430, 433 (Fed. Cl. 2000)

---

[3] The court notes that while MSANG submits that Bryant has also sought equitable relief in the form of reinstatement, in light of his plea for "[a]ll relief and remedies . . . afforded [him] in accordance with . . . § 25-9-191 et seq., plaintiff makes clear in his response memorandum that he does not seek reinstatement.

5

("[T]he Military Whistleblower Protection Act provides solely an administrative process for handling complaints of improper retaliatory personnel actions" and does not provide a private cause of action).[4]  Accordingly, plaintiff has no viable claim in this court against any defendant for any alleged violation of § 1034.[5]

Further, inasmuch as MSANG, for present purposes, is a state agency, all of plaintiff's remaining claims against MSANG are

---

[4] The Act establishes a comprehensive administrative scheme for review of reprisal complaints. Acquisto v. U.S., 70 F.3d 1010, 1011 (8th Cir. 1995).  It provides for corrective action by the Board for Correction of Military Records, the Secretary of the respective services, and the Secretary of the Defense, and states that "[u]pon the completion of all administrative review . . ., the member or former member of the armed forces . . . who made the allegation . . ., if not satisfied with the disposition of the matter, may submit the matter to the Secretary of Defense . . . [who] shall make a decision to reverse or uphold the decision of the Secretary of the military department concerned. . . ."  The applicable Operating Procedures in turn provide that the "decision of the Secretary of Defense is final," and the decision whether to uphold or reverse the decision of the Secretary of the military unit involved lies in the Secretary of Defense's "sole discretion."  See 32 C.F.R. 98a.

[5] Although plaintiff did clearly plead a claim for violation of the Military Whistleblower Protection Act in his complaint as a basis for relief, plaintiff obviously now recognizes that this is not a cognizable claim, for he argues in his response brief that
> the point of [his] claim under 10 U.S.C. Section 1034 is not for a private cause of action under that statute; rather, [he] contends his right to proceed with constitutional claims under the *First Amendment* and that his speech to the Inspector General are indeed "protected communication" under the military's own statutory and regulatory guidelines.

6

barred by the Eleventh Amendment.[6]  The Eleventh Amendment bars an action in federal court by a citizen of a state against his own state, including a state agency, unless the state has waived its immunity or Congress has validly abrogated the state's immunity. See Martinez v. Texas Dept. of Criminal Justice, 300 F.3d 567, 573 (5th Cir. 2002).  Neither exception applies to any of the claims involved here.

While Bryant suggests that the Mississippi Whistleblower Protection Statute represents a waiver of the state's Eleventh Amendment immunity, the text of the statute belies his position. Specifically, the statute requires that suits under the Act be

---

[6] "In each state the National Guard is a state agency, under state authority and control.  At the same time, federal law accounts, to a significant extent, for the composition and function of the Guard.  Accordingly, the Guard may serve the state in times of civil strife within its borders while also being available for federal service during national emergencies." Knutson v. Wisconsin Air Nat. Guard, 995 F.2d 765, 767 (7th Cir. 1993).  Because of the hybrid nature of the Guard, questions may arise as to whether the actions of the Guard and/or individual defendants were under color of state or federal law.  Here, the parties appear to agree, and the facts substantiate that MSANG is a state agency as to the matters at issue.  Cf. Knutson, 995 F.2d at 768 (concluding that service member's challenge to his termination by Guard presented "the rather straightforward case of state officers exercising their state authority to effectuate the termination of state militia personnel," and observing, "No one is claiming that the Guard had been called into service by the federal government at the time of the termination.  Moreover, WIANG is a part of the Wisconsin militia, with the governor serving as commander-in-chief.  The Adjutant General, an appointee of the governor, effected the termination of Knutson.  Slack's actions, administered at the state level, are therefore under color of state law.").

brought in the circuit courts of Mississippi.  See Miss. Code Ann. § 25-9-177.  In Martinez, supra, the Fifth Circuit explained that "[e]ven when a State consents to suit in its own courts, . . . it may retain Eleventh Amendment immunity from suit in federal court," that "[a] State's consent to being sued in federal court must 'be unequivocally expressed'," and that "for a state statute to waive Eleventh Amendment immunity, 'it must specify the State's intent to subject itself to suit in federal court'."  300 F.3d at 575.  Thus in Martinez, where the Texas Whistleblower Act contained a waiver of sovereign immunity and specified that the aggrieved employee could sue in a state district court, the Fifth Circuit found there was no waiver of the state's Eleventh Amendment immunity: "In other words, the Act waives state sovereign immunity only in Texas state courts."  Id.  The same conclusion pertains here.

Moreover, there has been no Congressional abrogation of state sovereign immunity as to claims under § 1983, 1985 or 1985.  See Quern v. Jordan, 440 U.S. 332, 338-40, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979); Edelman v. Jordan, 415 U.S. 651, 677, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); Seibert v. University of Oklahoma Health Sciences Center, 867 F.2d 591 (10th Cir. 1989), abrogated on other grounds, Federal Lands Legal Consortium ex rel. Robart Estate v. U.S., 195 F.3d 1190, 1195 (10th Cir. 1999) (seeing "no reason why the Supreme Court's reasoning and holding (in Quern and

Edelman) should not apply with equal force to plaintiff's civil rights claims under section 1985 (conspiracy) and section 1986 (failure to prevent conspiracy violations)"); Smith v. Johnson, 2005 WL 578470, *4 (N.D. Tex. 2005) (claims under §§ 1983, 1985 and 19895 barred by Eleventh Amendment).[7]

In addition, Bryant's claims under §§ 1983, 1985 and 1986 are barred for the further reason that these statutes create rights solely against "persons" and a state is not considered a "person" under these statutes.  See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983").[8]

If these reasons were not sufficient to mandate dismissal of plaintiff's claims against MSANG, those claims would be barred for additional reasons.  In Feres v. United States, 340 U.S. 135, 71

---

[7]  It follows that inasmuch as plaintiff is seeking only monetary damages and does not appear to be seeking any form of equitable relief, his claims against any of the defendant officials in their official capacity as state officers would be barred by the Eleventh Amendment.  That is to say, the Ex Parte Young exception to Eleventh Immunity for prospective injunctive relief against state officials in their official capacity is inapplicable.

[8]  Again, because Bryant has sued only for monetary relief, his claims under these statutes against state officials in their official capacity are not against "persons."  Cf. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'").

S. Ct. 153, 95 L. Ed. 152 (1950), the Supreme Court held that when it enacted the Federal Tort Claims Act, Congress did not intend for the FTCA's remedies to apply to a person who sustained an injury incident to military service, even if that injury would otherwise be actionable under the FTCA.  Thus, the Court held that soldiers could not recover under the FTCA for injuries that "ar[ose] out of or were in the course of activity incident to service."  340 U.S. at 146, 71 S. Ct. at 159.  Subsequently, in Chappell v. Wallace, 462 U.S. 296, 304, 103 S. Ct. 2362, 2367, 76 L. Ed. 2d 586 (1983), the plaintiffs, military personnel, brought a Bivens action seeking redress against their superior officers for discrimination in duty assignments and performance evaluations.  The Court held that in keeping with Feres, "it would be inappropriate to provide enlisted military personnel with a Bivens-type remedy against their superior officers," reasoning that

> [t]he special nature of military life, the need for
> unhesitating and decisive action by military officers
> and equally disciplined responses by enlisted personnel
> would be undermined by a judicially created remedy
> exposing officers to personal liability at the hands of
> those they are charged to command.

Id., 103 S. Ct. at 2367.  The Court's holding was applied and extended in subsequent cases.  See United States v. Shearer, 473 U.S. 52, 58, 105 S. Ct. 3039, 3042, 87 L. Ed. 2d 38 (1985) (dismissing claim against Army for negligent supervision by mother of a serviceman who was murdered by another serviceman on the

10

basis that allowing the claim to proceed would involve the courts in military management, evaluating "basic choices about discipline, supervision, and control of a serviceman"); <u>United States v. Stanley</u>, 483 U.S. 669, 684, 107 S. Ct. 3054, 3064, 97 L. Ed. 2d 550 (1987) (dismissing claims of former servicemen against Army for experimental administration of LSD on him while in military, reasoning that "no <u>Bivens</u> remedy is available for injuries that 'arise out of or are in the course of activity incident to service'"). The rationale for barring such <u>Bivens</u> actions was extended by the Fifth Circuit to § 1983 and § 1985 claims brought by members of the Texas National Guard in <u>Crawford v. Texas Army National Guard</u>, 794 F.2d 1034, 1036 (5th Cir. 1986). The court there reasoned,

> Section 1983 and due process claims, like those predicated on <u>Bivens</u>, invite judicial second-guessing of military actions and tend to overlap the remedial structure created within each service, which, according to <u>Chappell</u>, provide an exclusive remedy subject to review only under the arbitrary and capricious standard.

<u>Id</u>.

Nnotable here with respect to MSANG's position that Bryant's claims are barred by the <u>Feres</u> doctrine is the fact that while MSANG has broadly argued that all Bryant's claims <u>against it</u> are subject to <u>Fere</u>, its argument proceeds from the premise that all of Bryant's claims <u>against it</u> are related exclusively to employment/personnel issues, such as demeaning grade, work and space assignments, an alleged career-damaging evaluation and his

11

"forced retirement." Indeed, MSANG's initial brief contained no specific acknowledgment of plaintiff's factual allegations of intentional threats, vandalism and violence to which he claims he was subjected by "defendants," but rather focused solely on the military nature of the alleged "personnel decisions" concerning Bryant.[9]

Conversely, in his response to the motion, Bryant has himself sidestepped MSANG's arguments as to the military character of the referenced employment-related allegations of the complaint,[10] and focused instead entirely on his allegations of intentional threats, vandalism and violence by the individual defendants, which he submits were committed "by individuals, who just so happen to also be in the military but who act for no military

---

[9] In that initial memorandum, MSANG argued, "The core of COL Bryant's Complaint is that he suffered numerous adverse military personnel actions. . . ."; "military personnel decisions are nonjusticiable in civilian fora"; "COL Bryant complains that the Guard supposedly took numerous adverse military personnel actions against him. . . ."; COL Bryant's claims . . . clearly revolve around internal military personnel decisions"; "COL Bryant complains that the Guard took numerous adverse military personnel actions against him–all impacting his military career. . . ." Nowhere in that brief does MSANG directly argue that cutting the gas line on Bryant's wife's car, or slashing the tires on his personal plane, or falsifying medical records in an effort to cause him to lose his civilian job with Federal Express or any other myriad allegations of similar wrongdoing qualifies as a "personnel decision" or occurring "incident to military service."

[10] He also completely ignores MSANG's argument that it is not a "person" for purposes of Bryant's civil rights claims, and its claim of entitlement to Eleventh Amendment immunity, and thus has in effect confessed MSANG's motion.

purpose or reason [but] rather . . . for their own hatred against the Plaintiff."[11]

---

[11] Bryant argues, for example,
[T]he harm being perpetrated by the Defendants against the Plaintiff is in his civilian capacity, as specifically alleged in the Complaint. . . .
The factual allegations, taken as true, specifically point to Plaintiff's harm suffered outside the confines of the military. . . .  Indeed, no where in the Defendants' argument do they justify their actions against the Plaintiff in his employment with FedEx, at his residence, at a meeting of minority awareness counsel members, with respect to gunshots being fired at his place of residence, harassing phone calls, and the like, as more specifically set forth herein. . . .
 [T]his case does not seek to have this Court overrule military decisions, but it is rather brought in order to have this Court address the above violence and continuing acts of threats and intimidation against the Plaintiff by individuals, who just so happen to also be in the military but who act for no military purpose or reason; rather, they act for their own hatred against the Plaintiff.  Their actions occur off-base, have no justifiable military purpose, are perpetrated strictly for personal reasons, and are replete with vengeance against the Plaintiff for his having reported the Defendants' misdeeds, while he was in the military. . . .
 [T]he point of this suit does not touch upon inherently military or internal decisions concerning a serviceman's military duty; rather, the Complaint points to specific allegations of unmitigated violence, threats and intimidation against the Plaintiff.
 [A]ll of [defendants'] analysis begs the question of whether the actions of violence, threats, intimidation and harm specifically alleged in the Plaintiff's Complaint have anything to do with "internal military decisions." [T]he Defendants have not even argued or stated frankly to this Court how repeated gun shots, harassing telephone calls, physical assault and battery, the filing of frivolous law suits, the falsification of medical information to the FAA, the interference with Plaintiff's employment with FedEx, the issuance of false and defamatory statements, invoking the investigative authority of the TSA, the cutting of

In the court's opinion, it cannot reasonably be questioned that Bryant's allegations against MSANG (and for that matter, against all the defendants) relating to his employment are subject to the <u>Feres</u> bar. Bryant, in fact, does not actually contend otherwise.

Whether Bryant's claims based on his remaining allegations of misdeeds by "defendants" would be covered by <u>Feres</u> and its progeny is another matter, however. In the court's opinion, in light of plaintiff's contention that the individual defendants perpetrated these alleged threats and acts of vandalism and violence, and other acts of attempted interference with his civilian employment with FedEx on their own, for their own personal reasons and with no arguable military purpose, it follows that MSANG can have no liability of any sort based on such alleged wrongful acts. <u>See</u> <u>Sheridan v. United States</u>, 487 U.S. 392, 401 (1988) ("The tortious conduct of an off-duty serviceman, not acting within the course and scope of his office or employment, does not in itself give rise to Government liability whether the conduct is intentional or merely negligent.").[12]

---

> the gasoline line on Plaintiff's vehicle, the shooting out of windows to Plaintiff's motor home, and the slashing of tires on Plaintiff's airplane, have anything whatsoever to do with military functions.

[12] The court notes that MSANG has moved for sanctions pursuant to Rule 11, 28 U.S.C. § 1927 and the Mississippi Litigation Accountability Act, Miss. Code Ann. § 11-55-1 <u>et</u> <u>seq</u>.,

On the other hand, given that none of the individual defendants has undertaken to address Bryant's arguments pertaining to these allegations, this court cannot conclude that the dismissal of Bryant's civil rights claims against these individual defendants is in order at this time.

Based on the foregoing, therefore, it is ordered that MSANG's motion to dismiss is granted, as are the motions of the individual named defendants in their official capacities.  It is further ordered that the motions of the remaining defendants in their individual capacities are denied as set forth herein.

SO ORDERED this 26th day of August, 2005.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

for plaintiff's filing of an alleged frivolous action against MSANG.  While the court has concluded that MSANG is entitled to be dismissed from the action, the court is not persuaded that Bryant's complaint against MSANG was frivolous.  Accordingly, this motion will be denied.