UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JOE H. BRYANT, JR.                                              PLAINTIFF

VS.                              CIVIL ACTION NO. 3:05CV179TSL-JCS

MILITARY DEPARTMENT OF THE UNITED STATES SPECTRUM HEALTHCARE
RESOURCES, INC.                                                DEFENDANT

MEMORANDUM OPINION AND ORDER

    With the exception of defendant Greg Malta, the defendants in

this cause, Franklin E. Chalk, Frederick D. Feinstein, Roy A.

Graham, Billy Joe Gressett, Donald E. Jones, Langford L. Knight,

William F. Parten, Robert E. Pierce, Roger E. Shirley, Charles F.

Steed, Aaron K. Wilson and Thomas Temple, have moved for summary

judgment.[1]  Plaintiff Joe H. Bryant, Jr. has responded in

opposition to the motion and the court, having considered the

memoranda of authorities, together with attachments, submitted by

the parties, concludes that the motion should be granted in part

and denied in part, as set forth herein.

    Bryant brought this action asserting claims under federal and

state law based on allegations that defendants engaged in conduct

amounting to threats, intimidation and violence against him in

retaliation for his having made allegations of misconduct by

members (including defendants) of the 186th Refueling Wing of the

Mississippi Air National Guard (MSANG).  The facts, as drawn from

_____

    [1]  All of these defendants are represented by the same
counsel.  Malta, an attorney, represents himself.

the record and as set forth in one of the court's previous opinions in this cause, are as follows.[2]  According to his complaint, Bryant began his military service in 1974, and in 1980, was assigned to duty with the MSANG's 186th Tactical Recon Group, which later became the 186th Refueling Wing, located at Key Field in Meridian, Mississippi.  Bryant was eventually assigned to MSANG Headquarters, as its Director of Operations.  Bryant alleges that between 1990 and 1998, he "began to observe wrongful actions by superiors in the method and manner in which his fellow airmen were being treated."  In an effort "to protect and defend his fellow airmen at the 186th, in their jobs, ranks and assignments, as well as to protect the integrity of the 186th," he "took certain actions," including first addressing his allegations and concerns to his superior officers, and ultimately requesting an investigation by the Inspector General of the Department of the Air Force pursuant to 10 U.S.C. § 1034.  The Inspector General ultimately undertook two investigations, in which a number of Bryant's allegations of wrongdoing were substantiated.  Bryant's charges and the ensuing investigation were the subject of regular media coverage in local newspapers, and at one point, Bryant, along with the Inspector General's investigator, appeared on a radio talk show and discussed Bryant's allegations and the

---

[2]    See Bryant v. Military Dept. of State of Mississippi, Civil Action No. 3:05CV179TSL-JCS (S.D. Miss. Aug. 25, 2005).

investigation.  Bryant charged that the leadership was corrupt, and vowed to continue working for a change in leadership.

According to Bryant, as a result of his allegations of wrongdoing against senior Guard officials, he was humiliated, intimidated and harassed by various defendants.  He claims, for example, that when he first brought his allegations to the attention of then-Brigadier General of the MSANG, Harold Cross, in October 1998, Cross dismissed his complaint.  Thereafter, while he was deployed to Bosnia-Herzegovina during January 1999 through July 1999, Cross "sought Plaintiff's voluntary separation from MSANG," directing that plaintiff sign a letter of resignation (which plaintiff refused), and relieved plaintiff of his duties as Director of Operations; when plaintiff returned from Bosnia, he was not reinstated to his former position as Director of Operations but rather was assigned to the position of an officer junior in grade, lieutenant colonel, was directed to assist an officer junior to him; he was ordered to never report to anyone or perform any duties regarding the Wing's flight operations, even though he was a pilot and a colonel; certain of the defendants composed a career-damaging report in an effort to adversely affect his military record; Cross threatened him with loss of his career; he was assigned to a "storeroom" during a mandatory drill weekend and was ridiculed by Weaver and others; he was ordered by defendant Malta to sign dismissal paperwork associated with his

dismissal from MSANG; and someone (presumably one of the defendants) forged Bryant's signature to an acknowledgment that he would be separated from MSANG.  He alleges, moreover, that several items of his personal property were vandalized, shots were fired around his home, anonymous cards and letters were sent to him and to FedEx, his civilian employer, and two of the defendants actually assaulted him.

Based on these allegations, Bryant has asserted federal claims for violations of the Military Whistleblower Protection Act, 10 U.S.C. § 1034, under 42 U.S.C. §§ 1983 for violation of his First Amendment rights, and under §§ 1985 and 1986.  He has also advanced state law claims for violation of the Mississippi Whistleblower Protection Statute, Miss. Code Ann. § 25-9-171, et seq., intentional and/or negligent infliction of emotional distress, intentional interference with contract and defamatory/false light liability.  Plaintiff demands as relief compensatory and punitive damages, any penalties available under Mississippi Code Annotated § 25-9-171, et seq., prejudgment and post-judgment interest and attorney's fees.  In their motion, defendants seek summary judgment on each of plaintiff's claims.

This court previously held that allegations by Bryant against defendants concerning employment-related actions taken by any of the defendants against him are subject to the Feres bar.  See Bryant v. Military Dept. of State of Mississippi, Civil Action

No. 3:05CV179TSL–JCS (S.D. Miss. Aug. 25, 2005).  However, inasmuch as the individual defendants had filed no dispositive motion at the time of that opinion, there remained an open question as to whether plaintiff's claims against defendants based on allegations that the individual defendants perpetrated threats and acts of vandalism and violence, and other acts of attempted interference with his civilian employment with FedEx on their own, for their own personal reasons and with no arguable military purpose, were covered by <u>Feres</u> or otherwise stated a cognizable claim.  Defendants argue in their present motion that the only allegation by Bryant against any of the defendants for acts against him in their military capacities is his charge that defendants Chalk, Knight and Temple gave "assistance and input" to a career-damaging report composed by General Cross.  Defendants submit that since this alleged act was done within the course and scope of these defendants' military duties, any claim based on this act is barred by <u>Feres</u>.[3]  For his part, plaintiff does not

---

[3]     Defendants argue not only that Bryant's claim based on this allegation is barred by <u>Feres</u>, but also that he cannot succeed on any such claim inasmuch as he has no proof that defendants had written a career-damaging report.  In this vein, Bryant has testified that he heard there was an Officer Performance Review (OPR) in his file, and claims that defendant Greg Malta has admitted there was a "bad" OPR in his file; but plaintiff apparently has never seen this alleged OPR, has not produced any such OPR, and has testified that it was not in his final personnel records.  Without evidence that such a report exists and as to what it contains, plaintiff would be hard pressed to establish that any of the defendants contributed in any way to such a report.

dispute that defendants' conduct toward him while he remained in the Guard and prior to his retirement from military service are barred by the Feres doctrine, but he argues that Feres does not preclude his claims based on allegations of violence, threats and intimidation perpetrated by defendants against him after he had already been removed from the Guard and retired from military service.  Indeed, the remaining claims against defendants for actions taken against him are not barred by Feres, and defendants do not claim they are; defendants argue, though, that the remaining claims are subject to dismissal for other reasons.

Bryant has alleged that defendants' actions violated the Military Whistleblower Act, 10 U.S.C. § 1034.  This court has previously ruled that plaintiff has no viable claim under that Act for the reason that the statute does not authorize a private cause of action.  See Bryant, Civil Action No. 3:05CV179TSL-JCS (S.D. Miss. Aug. 25, 2005).  Notwithstanding the court's opinion, Bryant argues at one point in his response to defendants' motion that defendants' actions taken in reprisal for his having communicated wrongful conduct to the Inspector General violate 10 U.S.C. § 1034(b)(1) and (2), which is the Military Whistleblower Protection Act.[4]  That Act does not provide a private cause of

_____

[4]     Elsewhere in his response, Bryant states, "Make no mistake, the point of Plaintiff's claims under 10 U.S.C. Section 1034 is not for a private cause of action under that statute; rather, Plaintiff contends [he has a] right to proceed with constitutional claims under the First Amendment and that his

action, and thus plaintiff has not stated a cognizable claim against defendants under the Act.

Plaintiff has also alleged a claim for violation of the Mississippi Whistleblower Protection Act, Miss. Code Ann. § 25-9-173 et seq.[5]  Defendants submit that plaintiff cannot prevail on this claim for each of three reasons.  First, the Act proscribes reprisal or retaliation by a state "agency," not by one's co-workers, and provides a remedy only against the agency and the individual members of its governing board or authority, or where there is no governing board or authority, the agency's executive director;[6] the Act covers only retaliation or reprisal that adversely affects an employee's compensation or employment status;[7] and the Act affords no protection for actions taken against an employee after he is no longer employed.  Defendants

---

speech to the Inspector General are indeed 'protected communication' under the military's own statutory and regulatory guidelines."

[5]     Mississippi Code Annotated § 25-9-173 states:
(1) No agency shall dismiss or otherwise adversely affect the compensation or employment status of any public employee because the public employee testified or provided information to a state investigative body whether or not the testimony or information is provided under oath.

[6]     See Miss. Code Ann. § 25-9-175 ("An agency which violates [this section] shall be liable to the public employee for back pay and reinstatement.  In addition, an employee whose employment is suspended or terminated or who is subject to adverse personnel action . . . is entitled to sue . . . .").

[7]     See Miss. Code Ann. §25-9-173, supra, n.3.

argument on these points appear meritorious, and Bryant has not
contended otherwise in response to defendants' motion.
Accordingly, summary judgment will be granted on this claim.

Plaintiff charges additionally that defendants' retaliatory
actions violated his rights under the First Amendment.  In their
motion, defendants do not challenge Bryant's assertion that his
communications to his military superiors and/or to media outlets
concerning allegations of improprieties at the 186th constituted
protected speech under the First Amendment.  They argue, though,
not only does <u>Feres</u> bar plaintiff's claims for any actions taken
by defendants within their military capacities, but that plaintiff
cannot succeed on his claim under § 1983 as to all other acts
which occurred outside the course and scope of defendants'
military duties for he cannot show that defendants acted under
color of state law in committing such acts.

A claim for violation of the First Amendment to the United
States Constitution must be brought pursuant to 42 U.S.C. § 1983,
which requires state action.  To state a claim under § 1983, a
plaintiff must allege facts showing a person acting under color of
state law deprived the plaintiff of a right, privilege or immunity
secured by the United States Constitution or the laws of the
United States.  <u>See</u> <u>Ellison v. De La Rosa</u>, 685 F.2d 959, 960 (5th
Cir. 1982) (citing <u>Parratt v. Taylor</u>, 451 U.S. 527, 535, 101 S.
Ct. 1908, 1912–1913 (1981).  The Supreme Court has given the

8

following general definition of action taken "under color of state law": "Misuse of power, possessed by virtue of state law and made possible only because the wrong doer is clothed with the authority of state law, is action taken 'under color of' state law." United States v. Classic, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941); see also Lugar v. Edmondson Oil Co., 457 U.S. 922, 929, 102 S. Ct. 2750 (1982) (stating that "[t]he actions of a state officer who exceeds the limit of his authority constitute state action for purposes of the Fourteenth Amendment"). "[N]ot every action undertaken by a person who happens to be a state actor is attributable to the state." Harmon v. Grizzel, 2005 WL 1106975, 4-5 (S.D. Ohio 2005) (citation omitted). "Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office." Waters v. City of Morristown, Tenn., 242 F.3d 353, 359 (6th Cir. 2001) (citations omitted)(citing West v. Atkins, 487 U.S. 42, 49-50, 108 S. Ct. 2250 (1988), where the Court stated, "The traditional definition of acting under color of state law requires that the defendant ... exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."). In general, "a defendant's private conduct, outside the course or scope of his duties and unaided by

any indicia of actual or ostensible state authority, is not conduct occurring under color of state law." Harmon, 2005 WL 1106975, at 5 (citations omitted). "[E]valuation of whether particular conduct constitutes action taken under the color of state law, must focus on the actual nature and character of that action." Schultz v. Wellman, 717 F.2d 301, 304 (6th Cir. 1983). Here, the nature and context of defendant's alleged acts belies any reasonable conclusion that they acted under color of state law.

As this court noted in its prior opinion, plaintiff had argued that he brought this suit to address actions taken by plaintiff

> by individuals, who just so happen to also be in the military but who act for no military purpose or reason; rather, they act for their own hatred against the plaintiff. Their actions occur off base, have no justifiable military purpose, [and] are perpetrated solely for personal reasons. . . .

It would seem evident that actions taken by individuals who "just so happen to be in the military" but who have acted "off base" solely for their own personal reasons and with no military purpose or reason could not reasonably be found to have been taken "under color of state law." Apparently recognizing that this characterization of defendants' actions would doom his § 1983 claim, plaintiff's position has shifted somewhat; he now argues that although defendants acted in an "extra-military manner," they nevertheless "act[ed] under color of state authority in

10

perpetrating their retaliation against Bryant" because they "clothe[d] themselves as members of the state militia" and took the challenged actions against Bryant because they "considered him a threat to them, their military careers, their self-righteous honor and even to Key Field itself."  However, a state actor does not act "under color of state law" simply because his actions were undertaken in an attempt to protect his position as a state official.  Moreover, as plaintiff himself has acknowledged, the specific acts of which he complains, e.g., assaulting plaintiff, making harassing phone calls to plaintiff, vandalizing plaintiff's personal property, firing gun shots around plaintiff's home and trying to get plaintiff fired from his civilian employment with FedEx, were not made possible by defendants' military positions and did not occur in the course of defendants' performing any of their military duties.  Their alleged conduct was private conduct, "outside the course or scope of [their] duties and unaided by any indicia of actual or ostensible state authority."  Harmon, 2005 WL 1106975, at 5.  Plaintiff cannot succeed on any claim under § 1983.

Defendants have also argued that plaintiff has not stated a cognizable claim for relief under § 1985, noting that while there is no requirement of state action under § 1985, a claim under § 1985 "requires proof of a conspiracy 'motivated by racial or some other type of invidious, class-based' distinction."  Lyles v.

11

Lemmon, 165 Fed. Appx. 305-306, 1 (5th Cir. 2006) (citing <u>Holdiness v. Stroud</u>, 808 F.2d 417, 424 (5th Cir. 1987), and <u>United States v. Armstrong</u>, 951 F.2d 626, 630 (5th Cir. 1992)).  See <u>Garrie v. James L. Gray, Inc.</u>, 912 F.2d 808, 813 (5th Cir. 1990) (rejecting argument that "whistleblowers" are a protected class for purposes of § 1985 and dismissing claim for plaintiff's failure to show "some racial or otherwise class-based, invidiously discriminatory animus") (citing <u>Buschi v. Kirven</u>, 775 F.2d 1240, 1258 (4th Cir. 1985), and <u>Pope v. Bond</u>, 641 F. Supp. 489, 499 (D.D.C. 1986)).

Plaintiff implicitly acknowledges this, but points out that the requirement of class-based animus applies only to claims under § 1985(3), and that his claims are brought under § 1985(1) and (2).  Looking to § 1985(2), the first clause of that subsection prohibits a conspiracy to deter a party or witness in a federal court from attending or testifying in court, punishing parties or witnesses for having attended or testified in federal court or influencing or punishing federal jurors; this clause has no applicability here.  The second clause of § 1985(2) creates a cause of action against "two or more persons" who "conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws . . . ." 42 U.S.C. § 1985(2).  "Under this clause, like

12

§ 1985(3), a plaintiff must demonstrate that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" Dallas v. Holmes, 137 Fed. Appx. 746, 753, 2005 WL 1313801, 6 (6th Cir. 2005) (quoting Kush v. Rutledge, 460 U.S. 719, 726, 103 S. Ct. 1483 (1983)) (finding no valid claim under § 1985(2) where plaintiff did not allege membership in a protected class and discrimination based on such membership).  Plaintiff has no viable claim under § 1985(2).

Section 1985(1) prohibits conspiracies to interfere with a federal officer in the performance of his duties or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof.  As this subsection includes no requirement of class-based animus,[8] plaintiff's failure to identify any such animus is

_____

[8]    This court agrees that the Supreme Court's opinion in Kush v. Rutledge, 460 U.S. 719, 726, 103 S. Ct. 1483, 1487-88 (1983), "mandates a holding that a cause of action under § 1985(1) does not require an allegation of racial or class-based discriminatory animus." Wisdom v. Department of Housing and Urban Development, 713 F.2d 422, 426 (6th Cir. 1983).  At issue in Kush was whether the first part of § 1985(2) included a requirement of class-based animus.  In concluding there was no such requirement, the Court placed primary emphasis on the fact that certain parts of § 1985, namely § 1985(1), the first part of § 1985(2), and the second part of § 1985(3), "contain no language requiring that the conspirators act with intent to deprive their victims of the equal protection of the laws," whereas the second part of § 1985(2) and the first part of § 1985(3) "contain[] language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." Kush, 460 U.S. at 725, 103 S. Ct. at 1487.  The Court's reasoning leaves no room for

13

no impediment to the pursuit of this claim.[9]  Defendants argue,

doubt that class-based animus is not a requirement of § 1985(1).
See Pope v. Bond, 641 F. Supp. 489, 497 (D.D.C. 1986) ("[T]here is
no requirement under § 1985(1) that plaintiff allege racial or
other class-based, invidiously discriminatory animus.") (citing
Kush); see also Stern v. United States Gypsum, Inc., 547 F.2d 1329
(7th Cir.), cert. denied, 434 U.S. 975, 98 S. Ct. 533 (1977) (pre-
Kush case holding that § 1985(1) should not be limited solely to
cases where racial or group animus is present).  But see
Santistevan v. Loveridge, 732 F.2d 116 (10th Cir. 1984) (stating
that "[a] viable § 1985(1) cause of action requires allegations of
class-based or racial discriminatory animus"); Burson v. State of
Nev., Dept. of Human Resources, Welfare Div., 1994 WL 681051, *2
(9th Cir. 1994) (finding conspiracy claims under § 1985(1) were
correctly dismissed where plaintiff "failed to allege a
class-based or racial discriminatory animus required under
§ 1985(1) and (3).")

     [9]     Although a few cases have suggested that § 1985(1) is
limited to external disruption of a federal official's performance
of his job duties and thus exempts federal officials from
liability, the majority view appears to be that the section is not
so limited.  The court in Spagnola v. Mathis observed,
     In light of the Supreme Court's mandate in Griffin and
     significant case law in the lower federal courts, we
     cannot so limit the section.  Citing Griffin, the
     District Court in Stith v. Barnwell, 447 F. Supp. 970,
     973-74 (M.D.N.C. 1978), stated unequivocally that "§
     1985(1) would apply where defendants who were acting as
     federal employees were participating in a conspiracy
     otherwise proscribed by the subsection."  Similarly, in
     Mollnow v. Carlton, 716 F.2d 627, 631 (9th Cir. 1983),
     cert. denied, 465 U.S. 1100, 104 S. Ct. 1595 (1984), the
     Ninth Circuit noted that "§ 1985(1) is legislation
     specifically authorizing suit by injured federal
     officers [against their superiors]," but found that suit
     under the section was precluded for military
     subordinates.  In Windsor v. The Tennessean, 719 F.2d
     155 (6th Cir. 1983), the Sixth Circuit held the
     plaintiff stated a cause of action under § 1985(1)
     against a group of defendants, one of whom was his
     supervisor in the federal government.  In Lawrence v.
     Acree, 665 F.2d 1319 (D.C. Cir. 1981), this circuit
     assumed for purposes of deciding an official immunity
     claim that a § 1985(1) action would ordinarily lie
     against federal officials, though it did not rule on

14

though, that even assuming for the sake of argument that plaintiff has pled a viable claim under this section, he still has not shown that defendants engaged in any conduct that would be cognizable under those provisions.[10]

For his part, plaintiff submits that it was his affirmative duty as a member of the Air Force to bring misconduct to the attention of the appropriate authority, and that it was on account of his efforts in this regard that defendants undertook their retaliatory actions, and even went so far as to form an association, calling themselves the "Concerned Guardsmen of Mississippi," for the unmitigated purpose of going after him and both attempting to shut him up and to punish him for his public comments about the 186th.

In his complaint and throughout discovery, plaintiff has identified specific acts which he claims were committed by defendants in retaliation for his whistleblowing activities. Among other things, plaintiff has claimed that someone, probably

_____

that issue.  Finally, in Perry v. Golub, 400 F. Supp. 409 (N.D. Ala. 1975), the District Court found that there was a substantial likelihood that the plaintiff would prevail on the merits of one of three claims, one of which was a § 1985(1) claim against his superiors in the federal government.
809 F.2d 16, 29 (D.C. Cir. 1986).

[10]   Defendant has also alleged a cause of action under 42 U.S.C. § 1986, which imposes liability on those who know of conspiracies as described in § 1985 and who have the power to prevent the conspirators from acting but who fail to do so.

one or more of the defendants, cut the tires on his personal

airplane; shot the window of his motor home; fired shots around

his home; scratched his son's car; made harassing phone calls to

his home; mailed harassing cards to his home;[11] and wrote anonymous

letters to his employer FedEx.[12]  In their motion, defendants argue

that to the extent any of plaintiff's claims are based on these

incidents, summary judgment is in order because plaintiff has no

evidence to connect any of the defendants to these acts; rather,

he has only speculated that defendants had some involvement in

these incidents.  Defendants point to testimony by plaintiff in

which he admitted he did not know who committed these acts;[13] they

---

[11]     This incident involved a greeting card that was sent to
Bryant's home anonymously congratulating him on having an
illegitimate child.  Bryant testified that the greeting card was
one he had bought and had put in his computer bag.  He believes
that either Wilkes, Temple or Pierce must have stolen the card out
of his computer bag during a lunch break in court proceedings in
other litigation between some of the defendants and Bryant, and
that the same person or persons must have also gotten on his
computer and found documentation relating to his having ordered a
DNA kit for purposes of determining parentage, and that this
person or persons must have then written the card and mailed it to
his home.  Plaintiff has admitted that there were others in the
courtroom, and that he was not aware whether any of the defendants
remained in the courtroom for any part of the lunch break.

[12]     Anonymous letters were mailed to plaintiff's employer,
FedEx, in which it was alleged that Bryant had killed some
parrots, had sexual relations with a 12-year old girl, had
smuggled machine guns on a FedEx plane and had purloined pre-
employment test to help his friends pass the test and get hired by
FedEx.  According to plaintiff, FedEx investigated these
allegations and eventually determined they were false.  Defendants
have denied they sent the letters.

[13]     In other litigation, plaintiff testified that he felt
there had been retaliation against him by "the same parties under
investigation -- the same parties who have sued me," i.e.,
defendants, and stated, "[T]here's unexplained multiple activities
that have occurred by I don't know who, but none of it ever

16

submit that plaintiff's "feeling" or speculation that defendants were involved in these events is unsupported by any actual facts and is insufficient to withstand summary judgment. See Ward v. N.L.R.B., 462 F.2d 8, 13 (5th Cir. 1972) ("Obviously conjecture and speculation cannot substitute for proof.").

Plaintiff does not need direct evidence to establish defendants' involvement in these acts and could rely on circumstantial evidence to create a triable issue. Evidently that is his plan, for in response to defendants' motion, plaintiff has not offered any direct evidence tending to show that any of the defendants were involved in any of these incidents.[14] Rather, he has only argued that defendants had a motive to engage in such conduct. However, in support of their motion, defendants submitted evidence that the negative publicity generated by Bryant's charges of corruption had angered a number of people in the 186th, and in the Meridian area in general, so that defendants were, as they put it, "not the only people with a strong motive to

occurred before all of the Guard stuff and I personally feel it's Guard related."

[14]    Plaintiff has essentially ignored defendants' argument on this point altogether, and wholly fails to acknowledge his burden, in response to defendants' motion, to come forward with evidence to substantiate his allegations. Instead, he simply declares that his complaint "is replete with specific factual allegations of the violence, threats and intimidation perpetrated by the individual defendants." This is not a sufficient response. See Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002) ("Once the moving party has shown 'that there is an absence of evidence to support the non-moving party's cause,' the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986)).

dislike" him.  For his part, Bryant does not deny this; instead,
he simply states that he believes defendants had a stronger motive
than most to dislike him.  In the court's opinion, this is not a
sufficient showing to withstand summary judgment.  Plaintiff has
failed to create a genuine issue of material fact on any of his
putative causes of action based on the referenced allegations.

     In addition to these allegations, plaintiff has identified a
certain lawsuit brought by defendants against him for slander as
another example of action taken by defendants in retaliation for
plaintiff's discharge of his duties and to prevent him from
further discharging his duty to report misconduct to appropriate
authorities.  Specifically, Bryant notes that on June 3, 2003,
defendants, with the exception of Temple and Wilkes, filed a
lawsuit against him in the Circuit Court of Lauderdale County,
claiming that they had been slandered by statements made by Bryant
during a May 24, 2003 radio talk show, in which he said, among
other things:

> There are some disgusting officers . . . in leadership
> positions.  There's about 10 to 12 more people that need
> to be admonished.  [T]here's more [than] 60 or 100
> charges against . . . 10 to 15 people [yet to come] . .
> .  The entire leadership structure is corrupt.  I'm
> after the chief NCOs and the lieutenant colonels and
> above that have got blood on their hands in this action.
> All I want is leadership change.  I'm not going to stop
> until . . . we've had a leadership change. . . I'm going
> to be relentless. . . General Lipscomb and General Cross
> . . . [are] examples of failed leadership.  We have
> allowed a mafia-type system to grow in the leadership.

According to defendants, the court dismissed the lawsuit on the
basis that Bryant had not specifically named any of the defendants

in the radio talk show.[15]  Defendants argue that as a matter of law, even if they had a retaliatory motive for filing the lawsuit, plaintiff still cannot state a claim based on defendants' lawsuit against him because "(1) neither the federal nor the state whistleblower statutes provides a legal remedy, and (2) even if they did, the filing of a meritorious suit is not an actionable act of retaliation."  While the court has already determined that plaintiff has no actionable claim under either whistleblower statute, but defendants' argument on the first point does not account for plaintiff's claims under §§ 1985(1) and 1986.

Defendants' further argument that the suit cannot provide the basis for an actionable claim is drawn from <u>Bill Johnson's Restaurants v. NLRB</u>, in which the Supreme Court held that in light of the First Amendment right of access to the courts, "[t]he filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the [National Labor Relations] Act."  461 U.S. 731, 742-743, 103 S. Ct. 2161, 2170 (1983).  Defendants' argument in this regard would have this court assume that defendants' slander suit against Bryant was meritorious, or at least that they had a reasonable basis for

---

[15]     The court's order of dismissal which is included as an exhibit does not state a basis for dismissal, but rather recites that the court had conducted a hearing and at the hearing had ruled that the claims would be dismissed, and then gave the plaintiffs (defendants herein) the opportunity to file an amended complaint within 30 days.  When the plaintiffs failed to amend, an order was entered dismissing the case with prejudice.

bringing the action.  Yet they merely declare that they "understandably were upset that Bryant had made slanderous and disparaging statements about them," and argue that they could reasonably have thought they had a viable cause of action notwithstanding that Bryant did not identify them by name in the radio broadcast.  However, a party cannot succeed on a claim for slander merely because he was upset by disparaging comments; rather, a meritorious cause of action for slander requires proof, inter alia, that the disparaging statements were false.  See Speed v. Scott, 787 So. 2d 626, 631 (Miss. 2001) (cause of action for slander requires proof of "(a) a false statement that has the capacity to injure the plaintiff's reputation; (b) an unprivileged publication, i.e., communication to a third party; (c) negligence or greater fault on part of publisher; and (d) 'either actionability of statement irrespective of special harm or existence of special harm caused by publication.'") (citation omitted).  Bryant has maintained all along, and continues to maintain that his allegations were absolutely true.  Thus, even if defendants are correct that their motive in bringing the action against plaintiff is essentially irrelevant, this court cannot conclude as a matter of law that defendants' claim against Bryant for slander was meritorious or well-founded.  Defendants have not sustained their burden to demonstrate that summary judgment is proper as to this allegation.

Plaintiff charges in his complaint that he was "met by armed MSANG airmen when he attempted to attend a Minority Awareness

Council Meeting" on March 3, 2001.  Defendants have presented
evidence that the meeting in question was a dinner that was open
to members of the public who purchased tickets; that plaintiff
did, in fact, attend the dinner in question; and that while there
were armed guards present for the occasion, they were there to
provide security for a visiting three-star general, who was the
dinner speaker.  Defendants maintain and have presented evidence
that the guards were not there to intimidate plaintiff or to
attempt to prevent him from attending the dinner; and plaintiff
has pointed to no evidence to the contrary.  Accordingly, any
claim based on the incident is subject to dismissal.

Plaintiff has asserted a claim against defendants Temple and
Wilkes for an assault and battery allegedly committed by these
defendants on September 3, 2003.  Defendants seek summary judgment
as to this claim on the basis that the one-year statute of
limitations had run when this suit was filed on March 17, 2005.
See Miss. Code Ann. § 15-1-35 ("All actions for assault and
battery . . . shall be commenced within one (1) year next after
the cause of action accrued, and not after.").  Plaintiff suggests
that because the assault and battery was part of a pattern of
threats, harassment and intimidation which was of a continuing
nature, his claim for assault and battery is timely.  Irrespective
of whether evidence of the alleged assault and battery would be
relevant in connection with plaintiff's remaining claim for
conspiracy under § 1985 and 1986, his cause of action for assault
and battery is plainly untimely; the assault and battery is not

itself a continuing tort.  Accordingly, the claim for assault and battery will be dismissed.

Bryant has asserted causes of action for intentional and negligent infliction of emotional distress, defamatory/false light liability and intentional interference with his employment with FedEx.  His response to defendants' motion makes clear that each of these claims is based on his allegation that defendant Pierce sent a letter to the Federal Aviation Administration in an attempt to obtain revocation of plaintiff's pilot license, to invoke the investigative authority of the Transportation Safety Administration of the Department of Homeland Security and to obtain plaintiff's termination from his regular employment with FedEx.  The letter in question was dated November 11, 2004, and stated:

> Mr. Bryant also has a questionable mental background. During a recent AFOSI (Air Force Office of Special Investigation) inquiry an FAA medical examiner, Dr. Edward Caruth, attested to the suspicion that Mr. Bryant suffered paranoia, anxiety and possible schizophrenia.

According to plaintiff, Pierce's representation that Dr. Carruth had questioned his fitness for flight was unfounded, so that when Dr. Carruth learned of the letter, he demanded a retraction from Pierce.

Defendants argue that summary judgment is in order on plaintiff's claim for intentional interference with contract because plaintiff cannot establish that Pierce had no justifiable cause or lawful reason to write the letter or that plaintiff suffered damages resulting from Pierce's having written the

letter.  See Grice v. FedEx Ground Pkg. System, Inc., 925 So. 2d 907, 910 (Miss. Ct. App. 2006) (elements of intentional interference with contract are "(1) intentional and willful acts, (2) calculated to cause damage to the plaintiff in his lawful business, (3) done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice), and (4) resulting in actual damage or loss") (citations omitted).

Defendants submit that in writing the letter, Pierce was merely reporting a safety concern to the agency with jurisdiction over the issue, which he had a right and duty to do, and that under Mississippi law, the rule against interference with contracts "does not apply where one interferes with another's contract in the legitimate exercise of one's own right." Southwest Drug Co. v. Howard Bros. Pharmacy of Jackson, Inc., 320 So. 2d 776, 778 (Miss. 1975)  See also Federal Aviation Regulation 13.1 (providing that "any person who knows of a violation of the Federal Aviation Act of 1958 . . . or any other rule, regulation or order issued thereunder, should report it to [the] FAA").  They claim, as well, that "[t]he same right or duty that Pierce had to write the FAA also merits summary judgment on Bryant's claim for the intentional and/or negligent infliction of emotional distress."

The facts concerning Pierce's motivation and whether he was justified in writing the letter are obviously in dispute; and in the court's opinion, particularly in light of evidence that Pierce

may have misrepresented or "shaded" the facts in his letter to the FAA, the issue of whether Pierce had a justifiable reason for contacting the FAA is best reserved for trial.

Defendants submit as an alternative basis for dismissal of Bryant's intentional interference claim that he cannot prove an essential element of his claim, damages, because he did not lose his job or suffer any loss of income as a result of Pierce's letter. See Levens v. Campbell, 733 So. 2d 753, 761 (Miss. 1999) ("An action for tortious interference with contract ordinarily lies when [the interference] caus[es] one party not to perform and resulting in injury to the other contracting party."). Plaintiff maintains in response to defendants' motion that, in fact, there is evidence that he suffered damages, and specifically, evidence that he has lost the economic opportunity for advancement with FedEx, as a result of Pierce's letter, which in turn led to the loss of money in his job. He claims he lost one trip worth $1,200, but that the greatest impact has been on his career with FedEx and the lost opportunity for advancement to wide-body jets, which would increase his income by approximately $60,000 annually. The parties disagree as to the reason Bryant lost the trip that would have earned him $1,200, and also as to the reason he has been unable to advance to wide-body jets. In the court's opinion, plaintiff has presented sufficient evidence to withstand summary judgment on this claim.

A final charge by plaintiff, and one that is the subject of a separate motion by plaintiff for an evidentiary hearing regarding

spoliation of evidence and propriety of a negative inference instruction, is that defendants, or persons acting under their direction, broke into Bryant's truck in May of 2005 while the truck was parked at a Holiday Inn in Memphis and stole his laptop computer and other items pertinent to this case.  Bryant declares that, "[a]mazingly, during Bryant's deposition on January 11, 2005, in Pierce's ill-fated lawsuit against the United States Air Force, documents from Bryant's stolen computer were presented by Pierce's counsel," and that those same documents "have now likewise been submitted by the Defendants in support of the present motion."  Defendants assert this is "another baseless allegation with no proof," yet they state they welcome a hearing to prove the true facts, which are that they were not involved in the break-in and that plaintiff's counsel was specifically informed by Bryant and his lawyers over a year ago that the materials identified by plaintiff came anonymously in the mail. At plaintiff's request, and defendants' acquiescence, the court will set a hearing on plaintiff's motion and will deny summary judgment to defendants at this juncture as to claims based on this allegation.

Based on the foregoing, it is ordered that defendants' motion is granted in part and denied in part, as set forth herein.

SO ORDERED this 17th day of July, 2007.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE