UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JOE H. BRYANT JR.     PLAINTIFF

v.     No. 03:05 cv 179 TSL

MISSISSIPPI MILITARY DEPARTMENT, et al.     DEFENDANTS

### DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS
### SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to leave of the Court granted during the pre-trial conference, the defendants (with the exception of Greg Malta who represents himself *pro se*) submits this memorandum in submit of their summary judgment on Bryant's claim that they filed frivolous lawsuits. Bryant alleged that the defendants filed frivolous lawsuits against him to retaliate against him for his having filed charges with the Air Force IG. Document 88. Amended Complaint ¶ 43(d). Document 88.[1]

There are four suits in question.

1. Chalk, et al v. Berthoff and Bryant (slander, intentional infliction, trade libels)
2. Tommy Temple v. Jody Bryant (malicious prosecution)
3. Leslie Wilkes v. Jody Bryant (malicious prosecution)
4. Robert Earl Pierce v. Jody Bryant (invasion of privacy)

The focal point of this allegation has been Chalk v. Berthoff, the so-called radio talk show slander case that 12 of the defendants filed in Lauderdale County. That allegation is possibly the only remaining claim against the defendants collectively *as a group*. The grounds for dismissing the slander suit apply equally to the other three lawsuits.

***No Duty to Report Wrongdoing.*** The defendants' first motion for summary judgment on the retaliatory lawsuit was based purely on the First Amendment defense articulated in Bill Johnson's Restaurants v. NLRB, 461 U. S. 731 (1983). In addition to that defense, Bryant also

---

[1] Filing of frivolous lawsuits and abusing the process of the courts of the State of Mississippi by each of the defendants … against the plaintiff and … David Berthoff. Indeed, such frivolous and meritless lawsuits continue to be filed by each of the individual defendants herein.

1

failed to state a claim under § 1985(1) because his military position did not impose on him a duty to report wrongdoing.

In its recent decision, this Court said that a retaliatory suit could state a claim of civil conspiracy under 42 USC § 1985(1). Document 235, p.19. That statute prohibits persons from conspiring to injure a federal officer because he or she performed a duty imposed by his or her office.[2] Bryant claims that (1) he performed a duty by reporting wrongdoing, and thereafter (2) the defendants conspired to injure him economically by filing lawsuits in state court.[3]

The plaintiff's claim under § 1985(1) should be dismissed because: (1) Bryant's military assignments did not impose a duty on him to report perceived wrongdoing, (2) the underlying slander suit was protected by the First Amendment because it was not ***objectively baseless.***

Section 1985(1) prohibits a conspiracy "to injure [any person … holding any office, trust, or place of confidence under the United States,] in his person or property on account of his lawful discharge of the duties of his office."  42 USC § 1985(1).

For purposes of this motion, the defendants admit that (1) Bryant was a member of the Reserve Components of the Department of Defense (initially as a member of the Mississippi Air National Guard and later as a member of the Air Force Reserves),[4] and (2) as an officer in the Reserve Components, Bryant was a "federal officer" as that term is used in the statute.

Nevertheless, Bryant failed to state a claim because his military assignment did not impose a duty on him to report any perceived wrongdoing to the Inspector General or anybody else.[5] The statute protects only those federal officers in the discharge of the duties of their office. The statute does not extend to some self-imposed personal sense of duty or a perceived moral

---

[2] That statute prohibits a conspiracy "to injure [any person … holding any office, trust, or place of confidence under the United States,] in his person or property on account of ***his lawful discharge of the duties of his office.***"

[3] The filing of a lawsuit can be actionable retaliation in some contexts. For example, filing a lawsuit can be an unlawful act of retaliation under Title VII of the 1964 Civil Rights Act. See Harper v. Realmark Corp., 2004 WL 1795392 (S.D. Ind. 2004); and Ishkhanian v. Forrester Clinic S.C., 2003 WL 21479072 (N.D. Ind. 2003).

[4] After Bryant was discharged from the Mississippi Air National Guard in April 2000 ???, he transferred to the Air Force Reserve.

[5] All members of the military have a statutory right to report wrongdoing to the Inspector General under the Military Whistleblower Protection Act, 10 USC § 1032?  As this court noted, that statute provides administrative remedies, but does not authorize a private cause of action.

obligation "to do the right thing" or "to do what a good officer ought to do."  The statute repeatedly speaks in terms of the "lawful discharge of the duties of his office."[6]

Rule 56 now requires Bryant to come forth with some *evidence* (not beliefs, speculations or personal opinions) showing that his military assignments imposed a duty on him to report perceived wrongdoing to the IG.

***First Amendment Right of Access to the Courts.***  The second ground is a legal one.  Even if Bryant stated a claim under § 1985(1), his claim is barred by the First Amendment.  The First Amendment bars any retaliation claim based on a lawsuit that is not *objectively baseless*.  This Court touched on this issue with its citation to Bill Johnson's Restaurants v. NLRB, 461 U.S. 731 (1983).  See Document 236, p. 19-20.[7]   This Court held that it could not assume at this stage that the slander suit was meritorious under the rationale of Bill Johnson's.  Hence, summary judgment was denied.

---

[6]  Title 42 U. S. Code § 1985.  Conspiracy to Interfere with Civil Rights.  (1) Preventing officer from performing duties.  If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from ***discharging any duties thereof***; or to induce by like means any officer of the United States to leave any State, district, or place, where ***his duties as an officer are required to be performed***, or to injure him in his person or property on account of ***his lawful discharge of the duties of his office***, or while engaged in ***the lawful discharge thereof***, or to injure his property so as to molest, interrupt, hinder, or impede him in ***the discharge of his official duties***; … (3) … the party so injured or deprived may have an action for the recovery of  damages occasioned by such injury or deprivation, against any one or more of the conspirators.  (emphasis added).

[7]  This Court stated in its opinion as follows:

> Defendants' further argument that the suit cannot provide the basis for an actionable claim is drawn from Bill Johnson's Restaurants v. NLRB, in which the Supreme Court held that in light of the First Amendment right of access to the courts, "[t]he     filing and prosecution of a ***well-founded*** lawsuit may not be enjoined as an unfair labor practice, … ."  461 U.S. 731, 742-743, 103 S. Ct. 2161, 2170 (1983).  Defendants' argument in this regard would have this court ***assume that ...  they had a reasonable basis*** for bringing the action. … This court cannot conclude as a matter of law that defendants' claim against Bryant for slander was meritorious or well-founded.

Document 236 at p. 19-20.

However, the holding of Bill Johnson has been extended further by the Supreme Court. In BE&K *Construction Co v. NLRB*, 536 U. S. 516 (2002), the Supreme Court shifted the paradigm. Under Bill Johnson's,[8] the defendants would have to show their lawsuits were *meritorious*. Under BE&K, the defendants only have to show their lawsuit was not *objectively baseless* to be protected by the First Amendment.[9]

BE&K held that even if a suit was filed for *retaliatory* purposes and even if it is ultimately *unsuccessful* on the merits, it still cannot be the basis of a finding of an unfair labor practice unless the suit was *objectively baseless*. Hence, this additional component to the analytical framework requires summary judgment for the defendants on all claims of retaliatory lawsuits.

The following analysis might be helpful to show the development of the law in this area. In Bill Johnson's, a waitress picketed her employer's restaurant in an effort to organize a labor union. The employer sued her for slander. The waitress then filed an unfair labor practice charge with the National Labor Relations Board (NLRB) alleging that the employer's lawsuit was interfering with her statutory right to organize a labor union. The NLRB sought to enjoin (with a cease and desist order) the employer from proceeding any further with its state court lawsuit. The Supreme Court noted that free access to the courts is a constitutional right that might trump what would otherwise be unlawful retaliation.

In Bill Johnson's the Supreme Court used a three-step analytical framework. In the first step, the NLRB could issue a "cease and desist" order to stop a pending lawsuit (alleged to be retaliatory) ***only if*** the suit was retaliatory and "lack[ed] a reasonable basis in fact or law." Id. at

---

[8] In that case, a waitress claimed that she was fired for trying to unionize her employer's restaurant. The waitress and others then picketed the restaurant and distributed leaflets claiming that management had made sexual advances and had dirty restrooms. The restaurant then filed a libel suit and asked for an injunction to stop the waitress from harassing customers and blocking the entrance to the restaurant. The waitress then filed an unfair labor practice charge with the NLRB claiming that the employer filed suit to retaliate against her and discourage her from exercising her statutory right to organize a union. Id.

Bryant made essentially the same allegation. He said that the slander suit "was … to prevent any further testimony from me or anyone else." Ex. 1, Bryant dep. 58.

[9] An employer's filing of a meritorious libel suit in state court is not an unfair labor practice under § 8(a)(4), even if the employer had a retaliatory motive. Bill Johnson's Restaurants v. NLRB, 461 U.S. 731 (1983).

748.[10] If the suit was not enjoined, the matter proceeded to step two. At step two, the NLRB had to wait on the outcome of the underlying suit before deciding whether filing the suit was an unfair labor practice. After a decision on the merits by the state court, the analysis at step three was almost outcome determinative. If the employer won the underlying lawsuit, then "the employer should also prevail before the Board, for the filing of a meritorious lawsuit, even for a retaliatory motive, is not an unfair labor practice." Id. at 2172. On the other hand, "[i]f the state proceedings result in a judgment adverse to the plaintiff, the Board may then consider the matter further and, if it is found that the lawsuit was filed with retaliatory intent, the Board may find a violation and order appropriate relief." Id. at 749. The Supreme Court did not say that the employer (who lost in state court) would automatically loose before the NLRB on the unfair labor practice charge. However, an unsuccessful suit in state court obviously did not bode well for the employer before the NLRB.[11]

The precarious position of such an employer was put on a surer footing by the Supreme Court. The step-three analysis was clarified in BE&K Construction Co v. NLRB, 536 U. S. 516 (2002). The court held that even if the state court suit was ultimately *unsuccessful* on the merits, such a suit could still not be the basis of an unfair labor practice unless the suit was *objectively baseless*.

While the Supreme Court's holding was based on a statutory construction of the NLRA, all of the preliminary dicta in the opinion related to First Amendment protections for plaintiffs' filing suits generally. The import of the dicta in BE&K is that the First Amendment precludes a finding of unlawful retaliation under any federal law **unless** the lawsuit was *objectively baseless*. The effect of BE&K is that the First Amendment right to sue is not dependent on the outcome of a jury verdict.

Based on BE&K, the only issue on summary judgment is whether the defendants had any factual basis for their lawsuits. Unlike the analysis in Bill Johnson's, there is no longer any need

---

[10] The underlying slander suit here was dismissed on the procedural ground that the defendants failed to amend their complaint to allege specific acts. That dismissal was affirmed by the Mississippi Court of Appeals the same day that this court granted partial summary judgment on most of the plaintiff's claims. Chalk v Bryant , ___ So 2d ___ (Miss. App. 2007). A Petition for Rehearing was denied today, April 22, 2008.

[11] However, it did say that "if judgment goes against the employer in the state court, or if the suit is withdrawn or is otherwise shown to be without merit, … the Board may then proceed to adjudicate these … unfair labor practice cases." Id. at ___.

5

to wait on the outcome of the underlying suits. In fact, this Court can assume that all of those suits will be unsuccessful on the merits. The only issue is whether those suits were *objectively baseless* at the outset. If not, the defendants' First Amendment right to file those suit trumps any legal claims that Bryant might have for a retaliatory lawsuit.

For purposes of this motion, this Court can assume that (1) the defendants had a *retaliatory* motive and further assume that (2) all four lawsuits will be *unsuccessful* on the merits.[12]

***The Factual Basis for the Radio Talk Show Slander Suit.*** The undisputed evidence shows a factual basis that prompted the defendants to file this suit. The allegations in that suit were hardly made up.

A week before his appearance on that radio show, Bryant wrote a letter to Governor Musgrove saying that he was disgusted that some of the defendants had been promoted. Bryant's comments on the radio talk on 5/27/03 show are a matter of record. He told that audience that the unit leadership was corrupt, had blood on their hands and ran the unit like the mafia. Bryant said that the senior leadership should go. He said that he would be relentless in his efforts to change the leadership.[13]

Twelve of the defendants (all except Wilkes and Temple) filed a slander lawsuit against Bryant in June 2003. Bryant alleges that they did so in retaliation for his having filed complaints with the Air Force IG.

---

[12] The BE&K test seems to be identical to a Rule 11 motion for sanctions for making an allegations without any factual basis.

[13] The radio talk show has been generically referred to as "the slander lawsuit." However, there were two other counts. Counts two and three alleged the intentional infliction of emotional distress and falsehoods/trade libels. Complaint ¶ 20. The complaint alleges that each plaintiff was a subject or a material witness in an ongoing investigation being conducted by the Adjutant General of the State of Mississippi. Complaint ¶ 23. The complaint further alleges that the defendants, Joe Bryant and David Berthoff made comments on a radio talk show that slandered their good name and reputations. Complaint ¶ 25, 27. The statements were made intentionally with the intent to harm the plaintiffs and were sufficiently outrageous to cause them emotional distress. Complaint ¶ 34. The statements were derogatory matters about the plaintiff's business interest that constituted injurious falsehood or disparagement. Complaint ¶ 36.

In addition to the claims were pled, this Court can take judicial notice that other *bona fide* causes of action could have been pled including the interference with an employment contract. See Levens v. Campbell, 733 So. 2d 753, 761 (Miss. 1999). Bryant was obviously asking the Governor to fire some or all of the defendants. Their jobs were in jeopardy.

That suit was based on undisputed facts that Bryant had publicly made slanderous and disparaging statements against them as a group on a radio talk show as a part of his campaign to get them fired. Bryant said that the leadership of the unit was corrupt, ran a mafia-type system, and had blood on its hands. Ex. 10.[14]

Bryant's appearance on the radio talk show must be put in the context that it was the latest phase of his 4-month media campaign to cast himself as a self-righteous champion while casting negative aspersions on the senior leadership of the unit. By way of a short overview, Bryant's campaign started when he leaked a copy of the IG report to the media. Ex. 27 to Doc. 172. Ex. 2 to Doc. 172, p. 57. A series of newspaper stories followed about the investigation. Ex. 27-47 to Doc. 172. His campaign reached another level when he specifically named some of the defendants in a letter to the governor. Ex. 9 to Doc. 172. It then reached an even higher level when Bryant went on a radio talk show and publicly said that leadership was corrupt, mafia-like and had blood on its hands. In view of his comments, Bryant cannot allege that the suit was objectively baseless. It was obvious that Bryant was on a campaign to get the defendants fired and was willing to make slanderous and outrageous statements in order to get that done.

The following is a more detailed summary of Bryant's media campaign that eventually led to the suit. Bryant's media campaign started when the first IG report did not result in the immediate discharge of the wing commander. A frustrated Bryant complained to Governor Musgrove in an email dated 2/3/03 that "there has been no action taken by the [Adjutant General]. *** Colonel Weaver should be relieved of command immediately." Bryant also asked the governor for a meeting. Ex. 5 to Doc. 172. The following day, Bryant sent a copy of the IG report to Governor Musgrove and said that a "second follow-on investigation" would look into whether two state airplanes had been misappropriated for the benefit of Senator Trent Lott. Bryant again asked for a meeting with the governor. Ex. 6 to Doc. 172. Ex. 2 to Doc. 172, pp. 51-52.

Bryant emailed the governor again on 2/20/03 criticizing him for not taking any action. Bryant said that he had no choice but to go the media. He said he would be interviewed by the

---

[14] Bryant has shown no proof that the defendants knew that he had filed allegations against them with the IG. The defendants obviously knew that Bryant was on a public media campaign to get them fired, that he had mentioned specific names to the governor, and his campaign had led to him slandering them on a radio talk show.

7

Meridian TV station that day and that several newspapers would carry stories that weekend about the IG report. Ex. 7 to Doc. 172. The Clarion-Ledger broke the story on 2/23/03 under the headline, "Records Falsification, Racism Revealed in Report." Ex. 27 to Doc. 172. Bryant had posed for pictures for that story. Ex. 3 to Doc. 172, p. 28.

Within two days of the story, General Lipscomb discharged the wing commander. Ex. 32 to Doc. 172. Bryant now realized the power of the press. His three-year goal of getting the wing commander replaced was achieved with a single negative story in the newspaper. Since Bryant knew that a second investigation had been ordered, he set a goal of getting more officers fired. With his new connections with the media, Bryant could keep media attention focused on the follow-up investigation.

The first story on 2/22/03 was followed by stories on local TV. The Meridian Star followed the story very closely. The editor, Buddy Bynum, was a friend of Bryant's since their school days. Ex. 2 to Doc. 172, pp. 86, 134. Not surprisingly, the editor wrote an editorial on 3/2/03 stating, "I agree with Bryant and others who say that only a full housecleaning can restore the unit's luster." Bryant added that the Adjutant General should "remove from positions of authority every single member or officer at the 186th whose hands have been sullied by a collapse of integrity." Ex. 35 to Doc. 172.

The newspapers ran a number of follow-up stories for the next two months. Exs. 27-47 to Doc. 172. Bryant was frequently quoted in those stories. Ex. 2 to Doc. 172, p. 82. The following is a sampling of some of the headlines.

| Ex. | Date | Headline |
|---|---|---|
| 27 | 2/25/03 | Guard Commander Relieved of Duties, M-Star |
| 28 | 2/23/03 | Records Falsification |
| 29 | 2/25/03 | Probe Shows Misconduct in 186th, M-Star |
| 30 | 2/25/03 | Liquor Store is One of 186th Features, M-Star |
| 31 | 2/27/03 | More Disciplinary Action Likely in Guard's 186th |
| 32 | 2/28/03 | Lott: IG's Findings Reflect on 186th, M-Star |
| 33 | 3/1/03 | Lipscomb Says 186th Commander Discharged, CL |
| 34 | 3/2/03 | 186th ARW Target of New Investigation |
| 35 | 3/2/03 | Leadership Should be Replaced (letter to editor) |
| 36 | 3/2/03 | Blowing the Whistle on the 186th |
| 37 | 3/5/03 | Probe Focusing on Liquor Store |
| 38 | 3/7/03 | Officer Put on Leave in Base Probe |
| 39 | 3/19/03 | Lipscomb Pledges to Find Out Truth About Guard |
| 40 | 4/6/03 | Probe Into Meridian Guard Unit Expanded |
| 41 | 4/27/03 | The Fortunate Few |
| 42 | 4/30/03 | Politics May be Behind Problems in the Guard |
| 43 | 4/30/03 | Guardsmen Allegedly Coerced in Fund Drive, CL |

8

|    |        |                                                |
|----|--------|------------------------------------------------|
| 44 | 5/1/03 | Former Guardsmen Cite Coercion, M-Star         |
| 45 | 5/2/03 | Bryant Confirms Reports of Coercion at 186th.  |
| 46 | 5/5/03 | Attention Focused on 186th ARW                 |
| 47 | 5/7/03 | Investigator Interviews 186th Members          |

Bryant was serious about his goal of replacing the unit's leadership. To cast a wider net, Bryant decided to file more charges against more officers with the IG.[15] Bryant solicited grievances from disgruntled members (current and former) of the unit against officers in the unit. Bryant consolidated their complaints (some of which were 10 years old) into a 14-page email and sent it to the IG on April 12, 2003. This email made allegations against 10 or more officers. Ex. 2 to Doc. 172, pp. 67-68. Bryant wanted to file as many as 80 allegations, but the investigating officer convinced him to limit his campaign to 44 allegations against 15 subjects. Ex. 2 to Doc. 172, pp. 94, 61, 62.

On 5/7/03, the Meridian Star reported that the IG investigator had been in Meridian for five days interrogating witnesses. Ex. 46 to Doc. 172. On May 19, 2003, Bryant sent an email to Governor Musgrove giving him a status report of sorts on the investigation. He said that the current investigation would be far more damning than the first one and that everyone would be embarrassed. Ex. 9 to Doc. 172. Ex. 2, pp. 83-84. Bryant also specifically named seven defendants: Pierce, Wilson, Chalk, Malta, Graham, Shirley and Speed. Bryant's email stated:

> [There is] a certain element of airmen [who] should be … removed from command. This is documented. I find it utterly amazing and disgusting that … ***Cross, Weaver, Warren, Pierce, Wilson, Chalk, Malta, Graham, Shirley and Speed,*** [have been either promoted or assigned greater duties while identified and under investigation] … These promotions/ assignments give the appearance of personal rewards for not telling the truth. . . .

Ex. 9 to Doc. 172. Bryant also gave the governor notice that he would "share everything with the media" and was scheduled to appear on a radio talk show in 8 days. Bryant's email to the governor was circulated on the base. Several defendants became alarmed that Bryant would specifically mention their name to the governor in such a negative context. Ex. 13 to Doc. 172,

---

[15] Bryant started gathering statements from members of the unit about their grievances against various officers in the unit. Ex. 2 to Doc. 172, p. 68, 69, 95, 106. Bryant talked to three disgruntled employees who had worked for Pierce several years earlier in the C-26 program. Ex. 2 to Doc. 172, pp. 47, 62, 66, 81-82, 73, 116-17. Bryant sent their complaints and numerous others to Emanuel on April 12, 2003. Ex. 8 to Doc. 172.

9

Malta declaration ¶ 3; Ex. 16 to Doc. 172, Graham dep. 11; Ex. 14 to Doc. 172, Speed dep. 12; Ex. 20 to Doc. 172, Wilson dep. 16; Ex. 18 to Doc. 172, Chalk dep. 8-9.

Bryant was the featured guest on that radio talk show on May 27. Bryant did not identify any of the defendants by name, but he made the following slanderous and disparaging charges against the leadership of the unit:

> There are some disgusting officers . . . in leadership positions. Tr. 36. There's about 10 to 12 more people that need to be admonished. Tr. 34. [T]here's more [than] 60 or 100 more charges against … 10 to 15 people [yet to come] . . . . [T]he entire leadership structure is corrupt. Tr. 38. I'm after the chief NCOs and the lieutenant colonels and above that have got blood on their hands in this action. Tr. 44. All I want is leadership change. Tr. 11. I'm not going to stop until … we've had a leadership change . . . . I'm going to be relentless . . . Tr. 15. General Lipscomb and General Cross … [are] examples of failed leadership. Tr. 17. We have allowed a mafia type system to grow in the leadership. Tr. 41.

Ex. 10 to Doc. 172.

After the radio show, the defendants had a meeting to review their options. They discussed Bryant's email to the governor and the radio show. The defendants felt that they had been slandered by his public statements that the "leadership … is corrupt" and that he was "after [those] that had blood on their hands.". Ex. 15 to Doc. 172, Malta declaration ¶ 3. They therefore filed the lawsuit on June 3, 2003, in Lauderdale County Circuit Court. Ex. 16 to Doc. 172. The plaintiffs in that suit are the defendants in this suit except for Wilkes and Temple. That suit was dismissed on grounds that Bryant had not specifically named any of the defendants during the radio talk show. Ex. 17 to Doc. 172. An appeal is now pending before the Mississippi Supreme Court. The dismissal does not detract from the fact that the defendants had a reasonable basis in fact and in law to file the suit. Hence, Bryant cannot show sham litigation.

While the issue of corruption is disputed, the facts giving rise to the lawsuit are not: (1) Bryant publicity campaign to get the leadership changed, (2) his letters to the governor implicitly seeking the dismissal of most of the defendants, (3) his statements on the radio talk show that the leadership was corrupt.

This undisputed evidence shows that the slander suit was not objectively baseless. Therefore, the defendants are entitled to summary judgment on this claim.

*Factual Basis for the Malicious Prosecution Suits.*[16]

Temple and Wilkes filed separate malicious prosecution lawsuits against Bryant arising out of the Moose Lodge incident. Bryant, Wilkes and Temple exchanged words at the Moose Lodge in Meridian on September 3, 2003. Ex. 23 to Doc. 172, (Wilkes dep. 11-12); Ex. 19 to Doc. 172, (Temple dep. 23-24, 31). Bryant filed criminal assault charges against both and had them arrested. Their criminal cases were consolidated for trial before Justice Court Judge William Gunn in Lauderdale County. After hearing Bryant's evidence and witnesses, Judge Gunn dismissed the case without the defendants having to present any defense. Wilkes and Temple were represented by separate lawyers. Ex. 23 to Doc. 172, (Wilkes dep.); Ex. 19 to Doc. 172, (Temple dep. 30). Temple and Wilkes then filed civil suits in Lauderdale County for malicious prosecution in Lauderdale County Circuit Court. Ex. 19 to Doc. 172, (Temple p. 16.), Ex. 23 to Doc. 172, (Wilkes dep. 13). Thereafter, Wilkes and Temple filed separate suits for malicious prosecution. Based on these undisputed facts, it cannot be said that their civil suits were objectively baseless.

*Factual Basis for Pierce's Suit.* Earl Pierce filed a separate invasion of privacy lawsuit in Newton County Court. After the second IG investigation, the Air Force IG sent Bryant a summary of its findings. The letter to Bryant stated that it was protected by the Privacy Act and that Bryant should return the letter or destroy it. Bryant did neither. Rather, he gave a copy to The Meridian Star and the Clarion Ledger which published the name of Earl Pierce and other persons. The stories publicly detailed the allegations against Earl Pierce. Pierce filed a suit for invasion of privacy in the Circuit Court of Newton County. The suit is still pending. Based on these undisputed facts, it cannot be said that Pierce's lawsuit was objectively baseless.[17]

---

[16] Further, Bryant's claims that the individual suits filed by Temple, Wilkes and Pierce should be dismissed under § 1985(1) because those were individual lawsuits filed by single individuals and there is no allegation that there was a civil conspiracy. Even if there was a civil conspiracy, the filing of those suits is not actionable under the First Amendment because they were not objectively baseless. The radio talk show case could conceivably state a claim because the defendants did come together as a group and make a group decision to file this lawsuit against Bryant. They collected money for legal fees and deposited it in an account called "The Concerned Guardsmen of Mississippi." Those alleged facts could form the basis or the framework for a civil conspiracy.

[17] Pierce also sued the Air Force for violating the Privacy Act in releasing the document to Bryant. Judge Wingate granted summary judgment for the Air Force and the Fifth Circuit

*Conclusion.* For the above reasons, the defendants (with the exception of Greg Malta) request the Court to dismiss all allegations that they filed lawsuits in retaliation for Bryant's whistle-blowing activity.

                                    Respectfully submitted,

                                    */s/Michael Farrell*
                                    Michael Farrell
                                    YoungWilliams P.A.
                                    P. O. Box 23059
                                    Jackson, MS 39225-3059
                                    Tel:   601-948-6100
                                    Fax:  601-355-6136

CERTIFICATE OF SERVICE

      I certify that on April 22, 2008, this document was filed ECF and the Court's system should have automatically sent a copy to:

        Wayne E. Ferrell Jr.
        P. O. Box 24448
        Jackson, MS 39225-4448
        wferrell@airlawonline.com

        Paul Koerber
        P. O. Box 12805
        Jackson, MS 39236-2805
        psaklaw@aol.com

        F. Gregory Malta
        1906 West Alabama
        Houston, Texas 77098
        greg@maltalawfirm.com

                                      */s/Michael Farrell*
                                    Michael Farrell

---

affirmed. 512 Fed. 3d 184 (5th Cir. 2007). A Petition for Certiorari, No. 07-1206 is pending with the U. S. Supreme Court.